**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | | |
|---|---|---|
| **DEMAREST D. CRAWL,** | * | |
| *Plaintiff,* | * | |
| **v.** | * | **Civil Action: 8:15-cv-97** |
| **EXPERIAN INFORMATION SOLUTIONS, INC.** | * | |
| **505 City Pkwy West Orange, CA 92668** | * | |
| | * | |
| **Serve on:** | * | |
| **The Corporation Trust Incorporated** | * | |
| **351 West Camden St. Baltimore, MD 21201** | * | |
| **and** | * | |
| **CONTINENTAL FINANCE COMPANY, LLC** | * | |
| **Post Office Box 8099 Newark, DE 19713** | * | |
| | * | |
| **Serve on:** | * | |
| **Lamiaa E. Elfar 121 Continental Drive, Ste. 108** | * | |
| **Newark, DE 19713** | * | |
| *Defendants.* | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, Demarest D. Crawl, (hereafter the "Plaintiff") by counsel, and for her complaint against Defendant, Experian Information Solutions, Inc. ("Experian") and Defendant Continental Finance Company, LLC (hereafter "Continental"), alleges as follows:

## PRELIMINARY STATEMENT

1.      The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American citizens. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should ultimately benefit from the resulting convenience and efficiency.

2.      Unfortunately, however, this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can sustain substantial harm, both emotionally and economically, whenever inaccurate or fraudulent information is disseminated and/or obtained about them.

3.      The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are

commonly known as consumer reporting agencies ("CRAs").

4.      These CRAs sell to readily paying subscribers (*i.e.*, retailers, landlords, lenders, potential employers and similar interested parties) information, commonly called "consumer reports," concerning individuals who may be applying for retail credit, for the lease of an apartment, for a car or mortgage loan, for employment or the like.

5.      Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private and financial information that they compile and sell about individual consumers.

6.      Requiring CRAs to assure the "maximum possible accuracy" of consumer information is crucial to the stability of our banking system, *to wit*:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

7.      The preservation of one's good name is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the

opportunity to obtain a mortgage to buy a home. *We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

8.      To further the primary goal of greater accuracy, the FCRA also requires CRAs, as well as "furnishers" of credit information to the CRAs, among many other duties, to conduct "reasonable investigations" into disputes lodged to CRAs by consumers claiming to have inaccurate or incomplete information appearing in their credit reports, to correct or update any such errors or omissions, and to report back to the consumers the results of their investigations.

9.      This action seeks compensatory, statutory, and punitive damages, costs and reasonable attorneys' fees for Plaintiff Demarest D. Crawl against Experian and Continental for violation of common law and for their willful and/or negligent violations of the Fair Credit Reporting Act, as described herein.

## JURISDICTION

10.      The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p) and 28 U.S.C. 1367.

11.      The Plaintiff is a natural person and resident of the State of Maryland. He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

12.     Upon information and belief, Experian Information Solutions, Inc. is a corporation incorporated under the laws of the State of Delaware and is authorized to do business in the State of Maryland.

13.     Upon information and belief Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Upon information and belief Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

14.     Upon information and belief Experian disburses such consumer reports to third parties under contract for monetary compensation.

15.     Upon information and belief, Continental Finance Company, LLC is an issuer of consumer credit cards.

16.     In June and July of 2014, Plaintiff requested and received a copy of the credit file of the Plaintiff compiled and maintained by Experian.

17.     Within the credit report, Experian reported that Plaintiff had opened and was responsible for a credit account with Continental, which account was closed and had a derogatory payment history of "was past due 30 days" (the "Continental representation").

18.     The Continental representation was false because Continental opened a credit card account for the Plaintiff without the authorization of the Plaintiff.

Continental issue a credit card that was never activated by the Plaintiff and never used to make any purchases.

19.     On June 27, 2014; July 29, 2014, and August 14, 2014, Plaintiff contacted Continental disputing the Continental representation. Plaintiff requested that Continental Finance immediately stop reporting the incorrect information to credit reporting agency including Experian. Continental did not correct the Continental representation.

20.     On July 30, 2014; August 21, 2014, and October 10, 2014, Plaintiff contacted Experian disputing the Continental Finance representation. **Exhibit 1**.

21.     Experian responded by a report dated October 28, 2014. **Exhibit 2**.

22.     Upon the Plaintiff's request for verification and deletion, and in accordance with its standard procedures, Experian did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the Continental representation.

23.     In the alternative to the allegation that Experian failed to contact Continental, it is alleged that Experian did forward some notice of the dispute to Continental and Continental failed to conduct a lawful investigation.

## COUNT I
## VIOLATION OF 15 U.S.C. § 1681e(b) BY EXPERIAN

24.     The Plaintiff realleges and incorporates paragraphs 1 through 23 above as if fully set out herein.

25. A "consumer reporting agency" is defined by the FCRA as follows:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

*See* 15 U.S.C. § 1681*a*(f).

26. Experian is consumer reporting agency as defined by Section 1681*a*(f) of the FCRA.

27. Section 1681*n* of the FCRA imposes civil liability on any CRA "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681*n*(a). Any person who willfully fails to comply with any requirement of the FCRA is liable to the consumer for actual damages, statutory damages, punitive damages, costs of the action, and reasonable attorneys' fees. *Id*. at § 1681*n*(a)(l)-(3).

28. Section 1681*o* of the FCRA provides for civil liability against any CRA which is negligent in failing to comply with any requirement imposed under the Act. See 15 U.S.C. § 1681*o*. Any person who negligently fails to comply with any requirement of the FCRA is liable to the consumer for actual damages, costs of the action, and reasonable attorneys' fees. *Id*. at § 1681*o*(a)(l)-(2).

29. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum

possible accuracy of the information concerning the individual about whom the report relates." *See* 15 U.S.C. § 1681*e*(b).

30.     When Experian receives a dispute from a consumer, its "investigation" procedure involves little more than condensing the consumer's dispute to a two-digit code that gets transmitted electronically to the furnisher of the disputed information for comparison with the furnisher's own information.

31.     Upon information and belief, Experian does no independent or further "investigation" of the substance of the consumer's dispute.

32.     This method of investigation is known as "parroting" of information, and has been rejected routinely by courts throughout the country.

33.     Making matters worse, Experian has a policy and/or procedure not to investigate a dispute lodged by a consumer if the subject of the dispute has been "investigated" by Experian previously. In other words, upon receipt of a consumer's dispute, Experian's first step is to check whether the subject of the dispute has previously been "investigated" by Experian, *i.e.*, whether a two-digit code has previously been sent to the furnisher of the information to check whether the data matches. If it has, Experian refuses to do any sort of investigation into the consumer's dispute whatsoever.

34.     Upon information and belief, a procedure aimed at the expeditious elimination of work for Experian instead of the accuracy of the underlying information

is patently unreasonable.

35.    Moreover, the FCRA envisions the investigation process to involve both the CRA **and** the furnisher of the information. With two (2) separate entities involved, both of whom have distinct responsibilities to conduct a reasonable investigation, *see* 15 U.S.C. §1681*i* and § 1681*s-2b*, the consumer has greater protection that inaccurate information will be corrected as quickly as possible.

36.    Because of Experian's repeat dispute procedure, the consumer loses that protection. Experian unilaterally determines that the furnisher of the disputed information will not even been contacted to conduct its own investigation.

37.    While the FCRA allows a consumer to pursue a cause of action against a furnisher who fails to conduct a reasonable investigation of a consumer's dispute, the furnisher **must** receive notification from the CRA, not the consumer, as a pre-requisite to the cause of action. *See* 15 U.S.C. § 1681*s-2b*.

38.    As described above, Experian willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the information it circulated about Plaintiff.

39.    As a direct and proximate result of Experian's failures, Plaintiff has suffered economic and non-economic loss in specific amounts to be proved at trial.

40.    As a direct and proximate result of Experian's failures, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to

the average consumer such as themselves.

41.     As a direct and proximate result of Experian's willful and/or negligent refusal to adopt and/or follow reasonable procedures as mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to, financial loss, lost credit opportunity, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o. Plaintiff's application for a credit card on July 30, 2014, was denied due to the Continental representation.

42.     Experian's continued refusal to adopt and/or follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of the Plaintiff. The injuries suffered by he Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct entitling the Plaintiffs to statutory damages, punitive damages, attorneys' fees and costs pursuant 15 U.S.C. § 1681n(a)(2).

43.     Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

## COUNT II
## VIOLATION OF 15 U.S.C. § 1681i BY EXPERIAN

44.     Plaintiff realleges and incorporates paragraphs 1 through 46 above as if fully set out herein.

45.     The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completing of such an investigation. *Id.*

46.     The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the consumer reporting agency is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

47.     The FCRA allows a CRA to terminate an investigation "if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." See 15 U.S.C. § 1681*i*(a)(3)(A). However, the FCRA mandates that "[u]pon making any determination in accordance with subparagraph (A) that a dispute is frivolous or irrelevant, a consumer reporting agency shall notify the consumer of such determination not later than 5 business days after making such determination." *See* 15 U.S.C. § 1681*i*(a)(3)(B).

48.     Experian violated 15 U.S.C. § 1681i by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all

relevant information to Continental; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

49. Experian willfully and/negligently failed to conduct *any* investigation, let alone a reasonable investigation, of Plaintiff's dispute in violation of 15 U.S.C. § 1681*i*(a)(1).

50. Upon information and belief, at no point in its review of Plaintiff's dispute did Experian make a determination that the dispute was frivolous or irrelevant.

51. Experian certainly did not advise the Plaintiff that Plaintiff's dispute had been determined by Experian to be frivolous or irrelevant as expressly required by 15 U.S.C. § 1681*i*(a)(3)(B).

52. As a direct and proximate result of Experian's refusal to conduct a reasonable investigation, Plaintiff has suffered economic and noneconomic loss.

53. As a direct and proximate result of Experian's refusal, Plaintiff has suffered considerable mental, emotional and physical stress and distress.

54. As a direct and proximate result of Experian's disregard for Plaintiff's disputes and the importance of the Hills' good name and credit rating, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer such as themselves

55. As a direct and proximate result of Experian's willful and/or negligent

refusal to conduct a reasonable investigation as mandated by the FCRA and as outlined above, Plaintiff has suffered other loss and damage including, but not limited to, financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling them to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681$o$. Plaintiff's application for a credit card on July 30, 2014, was denied due to the Continental representation.

56.    Experian's continued refusal to adopt and/or follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiffs. The injuries suffered by Plaintiff is attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant 15 U.S.C. § 1681$n$(a)(2).

## COUNT III
## DEFAMATION BY CONTINENTAL

57.    Plaintiff realleges and incorporates paragraphs 1 through 34 above as if fully set out herein.

58.    Continental published the Continental representations to Experian and through Experian to all of Plaintiff's potential lenders on multiple occasions, including but not limited to the Continental response to Experian which formed the basis of the dispute letters to Experian (the "Defamation").

59.    The Defamation was willful and with malice. Continental had actual

knowledge that the Plaintiff had not opened a credit card account with it, had not activated the credit card issued for that account and had not used the credit card to make any purchases.

60.    As a result of this conduct, Plaintiff has suffered economic and noneconomic loss, and considerable mental, emotional and physical stress and distress. Plaintiff's application for a credit card on July 30, 2014, was denied due to the Continental representation.

61.    The Defamation, conduct and actions of Continental were willful, deliberate, intentional and/or with reckless disregard for the interests and rights of Plaintiff such as to justify an award of punitive damages against Continental in an amount to be determined by the Court.

## COUNT IV
## VIOLATION OF 15 U.S.C. § 1681s-2(b) BY CONTINENTAL FINANCE

62.    Plaintiff realleges and incorporates paragraphs 1 through 39 above as if fully set out herein.

63.    Continental violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by continuing to report the Continental representation within Plaintiff's credit file with Experian; by failing to fully and properly investigate the Plaintiff's dispute of the Continental representation; by failing to review all relevant information regarding same; by failing to accurately respond to Experian; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Continental

representation to the consumer reporting agencies.

64.    As a result of this conduct, Plaintiff has suffered economic and noneconomic loss, and considerable mental, emotional and physical stress and distress. Plaintiff's application for a credit card on July 30, 2014, was denied due to the Continental representation.

65.    Continental's conduct, action and inaction was willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

66.    The Plaintiff is entitled to recover costs and attorney's fees from Continental in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

WHEREFORE, Plaintiff, Demarest D. Crawl, respectfully prays for a judgment against Defendants as follows:

a.    Actual damages sustained in an amount in excess of $75,000.00 or statutory damages of not less than $100 and not more than $1,000 for violations of the FCRA;

b.    Such amount of punitive damages as the Court may allow for violations of the FCRA;

c.    The costs of the action together with reasonably attorney's fees as

determined by the Court;

      d.     Such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

Demarest D. Crawl hereby demands a trial by jury on all issues in this action, except for any issues relating to the amount of statutory damages, punitive damages, attorney's fees and litigation costs.

Dated: January 13, 2015          Respectfully Submitted,

                        */s/ E. David Hoskins_____*
                        E. David Hoskins, Esq. , No. 06705
                        THE LAW OFFICES OF E. DAVID HOSKINS, LLC
                        16 East Lombard Street, Suite 400
                        Baltimore, Maryland 21202
                        (410) 662-6500 (Tel.)
                        *davidhoskins@hoskinslaw.com*

                        */s/ Max F. Brauer_____*
                        Max F. Brauer, Esq., No. 30162
                        THE LAW OFFICES OF E. DAVID HOSKINS, LLC
                        16 East Lombard Street, Suite 400
                        Baltimore, Maryland 21202
                        (410) 662-6500 (Tel.)
                        *maxbrauer@hoskinslaw.com*