FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

2016 FEB -1  A 10: 21

| | | |
|---|---|---|
| **DEMAREST D. CRAWL,** | * | CLERK'S OFFICE |
| | * | AT GREENBELT |
| Plaintiff, | * | BY_____ DEPUTY |
| | * | Civil No.    **PJM 15-97** |
| v. | * | |
| | * | |
| **EXPERIAN INFORMATION** | * | |
| **SOLUTIONS, INC.,** *et al.*, | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

Demarest D. Crawl ("Crawl") has sued Continental Finance Company ("Continental Finance") alleging violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), and a state law cause of action for defamation. Continental Finance has filed a Motion to Compel Arbitration and Stay All Proceedings (ECF No. 24), which Crawl opposes. The parties' submissions have been reviewed, and the Court finds that no hearing is necessary. For the following reasons, Continental Finance's Motion to Compel Arbitration is **GRANTED**. Since all of Crawl's claims are subject to arbitration, the case will be **DISMISSED**.

### I. BACKGROUND[1]

---

[1] When a party brings a motion to compel arbitration prior to discovery and presents evidence outside the pleadings in support of its motion – as Continental Finance has done here – the other party must be given a "reasonable opportunity to present all material that is pertinent to the motion." See *Sarki v. Ourisman Rte. 198 Sales, Inc.*, CIV.A. AW-13-1913, 2013 WL 5771041, at *1 (D. Md. Oct. 23, 2013). In support of its Motion to Compel Arbitration and Stay All Proceedings, Continental Finance appends several documents outside the pleadings, including an affidavit of its Chief Financial Officer, William Knotts; Crawl's agreement with the issuer Services Credit Union regarding use of the Discover-brand card (the "Agreement"); and an October 21, 2013 letter from Mid-America Bank & Trust informing Crawl that her Discover-brand credit card account was being converted to a MasterCard-brand credit card account. Crawl has had "notice and a fair opportunity to contest the factual matter presented." *Id.* Indeed, attached to her Response in Opposition, Crawl also submits several documents, including an affidavit, credit reports from Experian Information Solutions, Inc. containing information about the Discover- and

On April 17, 2013, Crawl applied for a Discover-brand credit card from Continental Finance Company. Def.'s Mot. Compel Arbitration ("Def.'s Mot."), Ex. 1, ECF No. 24-3. Crawl does not dispute that she agreed to the terms of a contract for use of the card. *See* Pl.'s Resp. Opp'n ("Pl.'s Resp.") 1-2. The Discover Card was issued by Services Credit Union ("SCU") which, consonant with the terms of the contract (the "Agreement"), "immediately assign[ed] its rights for servicing and other rights to Continental Finance Company." Def.'s Mot., Ex. 2 at 6, ECF No. 24-4. The Agreement also contained the following pertinent provisions:

**Applicable Law.** This Agreement and your Account, and any claim, dispute, or controversy arising from or relating to this Agreement or your Account, are governed by and interpreted under federal law and construed in accordance with the laws of the State of Illinois (without applying its choice-of-law rules).
. . .
**Changes in Agreement Terms.** We can change any terms of this Agreement, including the rate at which or manner in which **INTEREST CHARGES** and Fees are calculated, in our sole discretion, upon such notice to you as is required by law. At our option, any change will apply both to your new activity and to your outstanding balance when the change is effective as permitted by law.
. . .
**Sale/Assignment/Transfer.** We may sell, assign, or transfer all or any portion of your Account or any balances due under your Account without prior notice to you. You may not sell, assign, or transfer your Card or your Account or any of your obligations under this Agreement.
. . .
**ARBITRATION**

**GOVERNING LAW.** This Agreement will be governed by the laws of the State of Illinois except to the extent governed by federal law. This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16 ("FAA").
. . .
**YOU ACKNOWLEDGE AND AGREE AS FOLLOWS**. . . . For purposes of this Waiver of Jury Trial and Arbitration Provision, the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation . . . all federal or state law claims, disputes or controversies, arising from or relating directly to the Loan Agreement. . . . **YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES.**
. . .

---

MasterCard-brand cards at issue in this dispute, and a letter from Continental Finance to Crawl containing a new MasterCard-brand card.

**OPT-OUT PROCESS**
You may choose to opt out of the Arbitration Provision, but only by following the process set-forth below. If you do not wish to be subject to this Arbitration Provision, then you must notify us in writing within sixty (60) calendar days of the acceptance of your Card.

Def.'s Mot., Ex. 2 at 6, 13, 17-19 (emphasis in original).

Crawl did not choose to opt-out of the Agreement's arbitration provision. Def.'s Mot., Decl. William Knotts ¶ 8, ECF No. 24-2. Thereafter in June and July 2013 she used the Discover-brand card, incurring at least $256.21 in charges and $75.00 in fees. Def.'s Mot., Ex. 3, ECF No. 24-5.

In or around October 2013, Mid-America Bank & Trust Company ("Mid-America Bank") acquired the SCU Matrix Discover credit card portfolio, which included Crawl's Discover-brand credit card account. *See* Def.'s Mot., Ex. 4, ECF No. 24-6. In conjunction with this acquisition, Mid-America Bank became the new card issuer, and notified Crawl to this effect in a letter dated October 21, 2013. *Id.* The letter stated in part:

As part of our purchase of the SCU Matrix Discover credit card portfolio, we are extremely excited to announce to you that we will be your new credit card issuer. In connection with this change, if your account is less than 60 days delinquent, you will be issued a new Mid-America Bank & Trust replacement MasterCard-branded credit card. . . . The conversion from your Matrix Discover credit card account to a new Matrix MasterCard credit account will occur on October 24, 2013. **As a result of our acquisition of your credit card account, there will be NO changes to any of your rates or fees and all terms of your existing cardholder agreement will remain the same.**

Continental Finance will continue to service your MasterCard credit account and you will receive the same level of service to which you are accustomed.

*Id.* (emphasis in original). Crawl's credit card was converted to a MasterCard-brand card on October 24, 2013. Def.'s Mot., Decl. William Knotts ¶ 12. She received the MasterCard-brand card in the mail, but she never activated it for use. Pl.'s Resp., Decl. Demearest Crawl ¶ 5, ECF No. 27-1.

In June and July of 2014, Crawl requested a copy of her credit file maintained by a credit reporting agency, Experian Information Solutions, Inc. ("Experian").[2] Compl. ¶ 17. This credit file reported a delinquent credit history linked to the new MasterCard credit account. Compl. ¶ 19; Pl.'s Resp., Decl. Demarest Crawl ¶¶ 3-4.

On January 13, 2015, Crawl filed a Complaint in this Court against Continental Finance, alleging defamation (Count III) and violation of the Fair Credit Reporting Act (Count IV). She premises her claims on the grounds that Continental Finance inaccurately reported information to Experian concerning the MasterCard-brand account, which resulted in Crawl receiving a negative credit history, with attendant damages.

On August 13, 2015, Continental Finance brought a Motion to Compel Arbitration and Stay All Proceedings, asserting that, by the terms of the Agreement Crawl entered into when she applied for and began using the Discover-brand credit card, she is obliged to arbitrate her claims concerning any reporting of the MasterCard account. Crawl, in opposition, contends that she never entered into an agreement to use a MasterCard-brand credit card, let alone agreed to arbitrate claims related to the card.

## II.  STANDARD OF REVIEW

"Motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D. Md. 2013) (quoting *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683 (D. Md. 2004)). In disputes such as this, in which "the formation or validity of the arbitration agreement is in dispute, a motion to compel arbitration is treated as one for summary judgment."

---

[2] Experian was originally a Defendant in this case. Crawl alleged violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681e(b) and 1681i against Experian (Counts I and II of her Complaint). On February 2, 2015, the Court received a Notice of Settlement between Crawl and Experian, and on March 9, 2015, the case was dismissed as to Experian. As such, Counts I and II of the Complaint have also been dismissed.

4

*Caire*, 982 F. Supp. 2d at 589 (internal citations omitted). Treating a motion to compel arbitration as a motion for summary judgment is also proper where, as here, the Court must consider documents outside the pleadings "to effectively assess the merits of [the] motion." *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683-84 (D. Md. 2004).

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the court "must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party," but must also "abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Caire*, 982 F. Supp. at 589-90 (citing *Scott v. Harris*, 550 U.S. 372, 278 (2007); *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

### III. APPLICABLE LAW

The Federal Arbitration Act (FAA) provides that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Congress enacted the FAA to "reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson, Lane Corp.*, 500 U.S. 20, 24 (1991).

In deciding a motion to compel arbitration, district courts "engage in a limited review to ensure that the dispute is arbitrable." *Hooters v. Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999) (internal quotations and citations omitted). That is, district courts must decide (1) "that a valid agreement to arbitrate exists between the parties," and (2) "that the specific dispute falls within the substantive scope of that agreement." *Id.*; *see also Murithi v. Shuttle Express, Inc.*, 712 F.3d 173, 179 (4th Cir. 2013). As to the first inquiry, courts must apply state contract law to

determine whether an agreement to arbitrate has been validly formed between the parties. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002). As to the second inquiry, any "uncertainty regarding the scope of arbitrable issues agreed to by the parties must be resolved in favor of arbitration." *Murithi*, 712 F.3d at 179.

Overall, in conducting its arbitration analysis, the court must be "mindful that its role is limited to determining the question of arbitrability, or the gateway dispute about whether the parties are bound by a given arbitration clause." *Grant-Fletcher v. Collectco, Inc.*, CIV.A. RDB-13-3505, 2014 WL 1877410, at *5 (D. Md. May 9, 2014) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).

## IV. ANALYSIS

The parties join issue only as to the first prong of the arbitrability analysis: whether Crawl entered into a valid agreement to arbitrate a MasterCard-brand card with Continental Finance. Nevertheless, the Court will address both prongs of the analysis. As the Court now explains, it finds that Crawl and Continental Finance entered a valid agreement to arbitrate, that the agreement to arbitrate governs the claims in this dispute, and that the case should be dismissed.

### A. The Validity of the Agreement to Arbitrate

The first issue is whether the parties in fact entered into an agreement to arbitrate disputes concerning the MasterCard credit card account identified in Crawl's Complaint. In support of its Motion to Compel Arbitration, Continental Finance asserts that Crawl entered into an agreement to arbitrate when she applied for and used the Discover-brand credit card issued by SCU and assigned to Continental Finance for servicing. *See* Def.'s Mot., Mem. Supp. 3, ECF No. 24-1;

Def.'s Reply 2-4, ECF No. 30. Implicit in Continental Finance's argument is that, despite the fact that the Agreement was sold by SCU to a new issuer, Mid-America Bank, and despite the fact that Mid-America Bank changed the brand of the card to MasterCard, the arbitration provision of the underlying Agreement continues to having binding effect. *See* Def.'s Reply 2-4.

As noted above, Crawl does not dispute that she entered into a credit card agreement (with SCU as issuer and Continental Finance as assignee and servicer)[3] for a Discover-branded credit card. *See* Pl.'s Resp. 1-2. Nor does she challenge the validity of the underlying provisions of that agreement, including its arbitration provision. *See id.* Rather, she contends that when she received the MasterCard-brand card in the mail from Continental Finance, the card constituted an offer to enter into a *new* agreement which she never accepted. *Id.* 2, 4-6. Thus, according to Crawl, she did not enter into any agreement for a "new" MasterCard-brand credit card, and she certainly did not enter into an agreement to arbitrate disputes relating to that card. *Id.*

The core facts are these:

A few months after Crawl entered the Agreement governing her Discover-brand credit card account, SCU sold her account to Mid-America Bank. After the transfer, Crawl's account was modified by the new issuer, Mid-America Bank, into a MasterCard-brand credit card. Two distinct changes thus occurred to Crawl's account in or around October 2013: (1) the transfer of issuer rights under the Agreement from SCU to Mid-America Bank (Continental Finance was maintained as servicer and assignee under the Agreement), and (2) unilateral modification of the credit card brand from Discover to MasterCard by Mid-America Bank.

---

[3] In her Complaint, Crawl actually refers to Continental Finance as the "issuer." Compl. ¶ 15. However, by the clear and express terms of the Agreement, *SCU* was actually the original issuer of the credit card, and Continental Finance was SCU's assignee and the servicer of the credit card account.

### 1) *SCU's Sale of Crawl's Account to Mid-America Bank*

Did the change to Crawl's account in October 2013 – the transfer of issuer rights from SCU to Mid-America Bank – affect the enforceability of the arbitration provision?

As noted above, state law governs the matter of whether a valid and enforceable agreement to arbitrate exists between the parties. *First Options of Chicago*, 514 U.S. at 944. Since the Agreement at issue contains a choice-of-law provision designating Illinois as the law to be applied in interpreting and construing the contract, the Court applies Illinois law in analyzing whether the Agreement and its arbitration provision survive the transfer of issuer rights between SCU and Mid-America Bank. *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 575 F. Supp. 2d 696, 704-05 (2008) (applying Mississippi law to analyze the validity of an agreement to arbitrate when various contracts between the parties specified Mississippi law as the choice of law); *see also Gen. Elec. Capital Corp. v. Union Corp. Fin. Grp. Inc.*, 142 F. App'x 150, 152 (4th Cir. 2005) ("Because the contract so specifies, Oregon law applies to this dispute.").

Under Illinois law, a court is ordinarily expected to enforce the express terms of a contract between the parties, inasmuch as those terms are the best indication of the parties' intent. *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (2007). Accordingly, terms expressly authorizing the sale or assignment of a contract are generally enforceable, notwithstanding a party's later objection to the sale or assignment. *See* Restatement (Second) of Contracts § 323(1) ("A term of a contract manifesting an obligor's assent to the future assignment of a right . . . is effective despite any subsequent objection."). Further, an assignment, "[o]nce made . . . puts the assignee into the shoes of the assignor." *Collins Co. v. Carboline Co.*, 532 N.E.2d 834, 839 (1988).

When SCU sold its Matrix Discover credit card portfolio to Mid-America Bank, SCU essentially assigned or transferred its rights in the credit card account contracts – including its

8

rights under the Agreement with Crawl – to Mid-America Bank as its successor-in-interest. The plain language of the Agreement authorized SCU to do just this, i.e. to assign or sell its rights to another issuer. This transfer, therefore, was valid.[4] After its purchase of the Matrix credit card portfolio, Mid-America thus became the new counterparty to Crawl in the Agreement, enjoying the same rights and obligations as SCU originally had. *See Collins*, 532 N.E.2d at 839. Moreover, per the Agreement, the servicing and other enforcement rights in the Agreement remained assigned to Continental Finance. *See* Def.'s Mot., Ex. 4.

In other words, the terms of the Agreement Crawl entered into when she applied for and used the Discover-brand credit card remained valid and enforceable, despite the sale of her account by SCU to the new issuer, Mid-America Bank.[5] As a result, Continental Finance, as assignee and servicer under the transferred Agreement, may enforce the Agreement's arbitration provision against Crawl. *See Vill. of Westville v. Loitz Bros. Const. Co.*, 519 N.E.2d 37, 38-39 (1988) (holding that assignee of agreement could enforce arbitration provision of that agreement); *accord Grant-Fletcher*, 2014 WL 1877410, at *7 (applying Maryland law and holding that assignee of agreement which included an arbitration provision could compel arbitration); *Cheraghi v. Medimmune, LLC*, CIV.A. AW-11-1505, 2011 WL 6047059, at *5-6

---

[4] Even if the parties had not expressly agreed to SCU's ability to sell the Agreement, Illinois law generally permits parties to freely assign or transfer their rights in a contract, unless the parties have expressly agreed to the contrary. *Collins*, 532 N.E.2d at 839-840. There are, of course, exceptions to this rule—an assignment may not materially change the duty of the other party, materially increase the burden or risk imposed on him or her, impair the other party's chance of obtaining return performance, or run contrary to the terms of the agreement between the parties. *See id.* None of these exceptions applies here. The transaction at bar was a sale by one bank issuer to another bank issuer. The fact that Continental Finance remained as servicer under the contract strongly suggests that the assignment did not materially modify the risks and obligations of either party. *See* Def.'s Mot., Ex. 4. Further, no financial obligations on the part of Crawl changed after the transfer, including the terms regarding payment, fees, APR, and arbitration of disputes. *See id.*

[5] The effect of subsequent modifications to the Agreement, such as the brand of the card and the account number, is discussed further below.

(applying Maryland law and concluding that a "successor-in-interest may enforce an arbitration agreement").

### 2) *The Change in Credit Card Brand from Discover to MasterCard*

The second modification of Crawl's account – the change in card brand from Discover to MasterCard – seems to have generated the most heated debate. The crux of Crawl's argument in opposition to arbitration is that she never entered into an agreement for a MasterCard-brand credit card at all, and, as such, she cannot be bound to arbitrate disputes related to that card. Her assertion, however, fundamentally misconstrues the nature of the change that occurred to her account in or around October 2013.

Discover and MasterCard were not parties to the Agreement—rather, they were the networks or brands chosen by the issuers for processing the transactions in Crawl's account. In this sense, networks or brands such as these are more properly considered terms of the Agreement rather than parties. *Compare* Restatement (Second) of Contracts, § 2 (1981) (defining "promisor" and "promisee," or the parties to a contract)*, with id.* § 5 (defining "terms" of a contract). Crawl entered into an Agreement with SCU for a credit card account – originally branded as a Discover credit card – in which one of the terms, the brand, was unilaterally modified by SCU's successor, Mid-America Bank, after it purchased the account. As Crawl was advised, "[Y]ou will be issued a new Mid-America Bank & Trust replacement MasterCard-branded credit card. . . . The conversion from your Matrix Discover credit card account to a new Matrix MasterCard credit account will occur on October 24, 2013." Def.'s Mot., Ex. 4.

In October 2013, Mid-America did not offer Crawl a "new" agreement for a different credit card account as she claims. Rather, she was informed by her issuer that one of the terms of her current account was being *modified*, which the express terms of the Agreement Crawl

entered into allowed SCU, and then Mid-America Bank, to do.[6] *See* Def.'s Mot., Ex. 2 at 6-7 (containing a "Changes in Agreement Terms" clause permitting the issuer to change any term of the agreement, as permitted by law).

Under the FAA and federal substantive law of arbitratibility, arbitration clauses are severable from the rest of an agreement. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69 (2010). This means that courts, when considering motions to compel arbitration, confine their analyses to whether a valid agreement to arbitrate was formed. As such, the Court is cautioned not to consider arguments that other portions of the agreement may be unlawful or invalid. *See Snowden v. CheckPoint Cashing*, 290 F.3d 631, 636-38 (4th Cir. 2002) ("Here, Snowden's allegations of usurious rates of interest and non-licensure do not relate specifically to the Arbitration Agreement. . . . Therefore, they cannot serve as a basis to uphold the district court's denial of Elite's Motion to Compel Arbitration/Stay Proceedings."); *see also, e.g.*, *Murithi*, 712 F.3d at 184 ("In view of its gatekeeping function, the scope of a motion to compel arbitration is restricted to consideration of challenges specific to the arbitration clause.") (internal citations omitted). For these reasons, any challenge by Crawl to the modification of the brand on her account would not affect the enforceability of the arbitration provision of the Agreement, which is severable and remains intact.

---

[6] It does not appear to be uncommon or controversial for credit card companies or issuers to change the card brand or network of a customer's credit card account. For example, in response to the question, "Can my card issuer change my credit card from a MasterCard to a Visa – or from a gas card/department store card to a MasterCard? ," the Consumer Financial Protection Bureau (CFPB) explains on its website:

> Yes. While the law does not permit the mailing of unsolicited cards, the card issuer can substitute one credit card for another. For example, your card issuer can send a substitute card when there is a change in the card issuer's name, the name of the card, or the features of the card. After the substitution, only one credit account can remain active for use.

Consumer Financial Protection Bureau, *Ask CFPB: Can my card issuer change my credit card from a MasterCard to a Visa - or from a gas card/department store card to a MasterCard?*, Consumer Financial Protection Bureau (Dec. 17, 2015, 12:00 p.m.), http://www.consumerfinance.gov/askcfpb/76/can-my-card-issuer-change-my-credit-card-from-a-mastercard-to-a-visa-or-from-a-gas-carddepartment-store-card-to-a-mastercard.html.

The Court thus concludes that an Agreement – including a promise to arbitrate disputes related to Crawl's credit card account – was validly formed between Crawl and SCU and transferred to Mid-America Bank, which then assigned rights in the Agreement to Continental Finance. The promise to arbitrate in the Agreement remains enforceable against Crawl by Continental Finance, despite the change in brand (and account number) on Crawl's credit card account.

## B.  The Scope of the Agreement to Arbitrate

Having concluded that Crawl entered into a valid and enforceable agreement to arbitrate with Mid-America Bank and its assignee, Continental Finance, and that the Agreement covers the MasterCard account at issue, the Court considers whether the claims against Continental Finance fall within the scope of that agreement. *See Murithi*, 712 F.3d at 179.

Crawl alleges a state law defamation claim (Count III) and violation of the Fair Credit Reporting Act (Count IV), arguing that misrepresentations were made about the status of her account to Experian. The arbitration provision of the Agreement clearly encompasses disputes concerning the account brought under both federal and state law. Def.'s Mot., Ex. 2 at 17-18 (stating that "disputes" means "all federal or state law claims, disputes or controversies, arising from or relating directly to the Loan Agreement" and that "**YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES**"). "Keeping in mind the broad federal principle favoring arbitration," *Grant-Fletcher*, 2014 WL 1877410, at *9, since Crawl's claims pursuant to both the federal Fair Credit Reporting Act and the state law tort of defamation fall squarely within the scope of the arbitration provision of the Agreement, Continental Finance is entitled to have its Motion to Compel Arbitration granted.

12

## C. Dismissal of the Case

Although Continental Finance has moved only to stay proceedings in this matter, *see* Def.'s Mot. 1, the Fourth Circuit has "acknowledged that dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 (4th Cir. 2012) (internal citations and quotations omitted). Correspondingly, "district courts in the Fourth Circuit have recognized that dismissal, rather than a stay . . . pending arbitration, is appropriate where [, as here,] a court rules that all of a plaintiff's claims must be arbitrated." *Taylor v. Santander Consumer USA, Inc.*, No. CIV.A. DKC 15-0442, 2015 WL 5178018, at *7 (D. Md. Sept. 3, 2015) (quoting *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 856 (D. Md. 2013)).

As in *Taylor*, 2015 WL 5178018, at *7, and *Titanium Dioxide*, 962 F. Supp. 2d at 856, all of Crawl's remaining claims (Counts III and IV against Continental Finance) are subject to arbitration.[7] Since "no useful purpose will be served by staying the pertinent proceedings pending arbitration," the Court will therefore dismiss Crawl's suit. *See id.* Whatever legal claims she wishes to pursue against Continental Finance may be pursued in the arbitration proceeding.

## V.  CONCLUSION

For the foregoing reasons, Continental Finance's Motion to Compel Arbitration (ECF No. 24) is **GRANTED**. This case is **DISMISSED WITHOUT PREJUDICE SUBJECT TO ARBITRATION**. The Clerk of Court shall **CLOSE** the case.

---

[7] As noted above, Counts I and II of Crawl's Complaint have already been dismissed. *See supra* text accompanying note 2.

A separate Order will **ISSUE**.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

January 29, 2016